May it please the Court, this case turns on the proper meaning of every single phrase, configured to engage, configured to engage, of course it's a question of law and state level review. Now this phrase, configured to engage, appears three different places in Claim 1, three different places in Claim 1. It appears in a different place in Claim 2, which is dependent on Claim 1, so that phrase would appear four times in Claim 2. The district court said, well the first time I'm going to interpret configured to engage to mean configured to cannot engage. But doesn't the context of the surrounding phrasing in the different uses give meaning to that phrase in different senses and therefore provide the capability of interpreting those phrases in different ways. For example, in Claim 1, paragraph C, a fastener portion configured to engage the spine, obviously that's talking about the threaded engagement, that context reveals clearly that there's a certain configuration that may very well be different from the configuration described for the locking cap. That much I would agree that there could be a different type of engagement for the various tying together of components. But that doesn't change, I believe, the interpretation of configured to engage, which has to be broad enough and general enough to cover all the contexts in the claims. It doesn't make any sense that it means one thing in one part of the claim and something else in the second part. And I will tell you, the district court never interpreted what configured to engage meant in any of the other phrases, in the other portions. Had they done that, we'd have to come back to really what the Acromed-Softner-Danik case said. When you have general terms, in this case it's a term of engagement type here. The terms have to be broad enough to cover all the different ways it's used in the claim. And here, the types of engagement that are for the various components, yeah, they could be different. But they all have to fall within the confines of the meaning of configured to engage. We're talking here about camming and the district court's attribution of camming to this expression, configured to engage. And I noticed in reading through the claims that there are some dependent claims, claim three for example, that talk about the flange, the arcuate flange. There isn't a dependent claim that talks about a camming surface on that flange. And it doesn't seem like the camming surface or the camming structure is set forth in any claim. It doesn't have to be. It doesn't have to be. It doesn't have to be. It strikes me as odd. Well, I disagree with that. The invention is very broad. Before this, all the mechanisms had threaded type end caps. They caused problems. Here we came in with something that is just a little bit different. The claim talks about, and the district court emphasized the aspect of the fact that the locking cap secured the position of the head portion relative to the spinal rod. If you read the written description, it's hard to come away from that and not conclude that the idea of securing the head portion to the rod was central to the functionality of this invention. And that if these two components were not secured, that that would present some serious problems. And, of course, one of the drawbacks of the prior art is that when a surgeon wanted to secure those two together using a screw thread, there was the risk of stripping the threads or over-tightening or this, that, or the other. And this invention overcame that problem, but nonetheless secured the two together. And the district court seemed to emphasize the fact that that securing capability comes from the camming. It can't come from the camming. No one disagrees that camming helps those advantages. The question is, should the camming be limited to only camming and not other ways to accomplish the configure-to-engage? And that's where the error is. But where in the written description is there any, any suggestion of any other way other than camming? The written description is, describes the preferred embodiments. And that's pretty clear if you read it in this context. It talks about preferably the inclined flanges, preferably the inclined slots. And it goes on to give one example, and that's also required to make and use. Now the patent does talk about using, not using, the patent talks about the different types of end caps that could have the bayonet. And if you look at column one, the bottom talks about threaded caps, bayonet caps, camming caps. As in the prior art, it says those are the types that are used. The problems with all those, some of them use, they use the threading type mechanism, even the bayonet. But the bayonet doesn't have a thread per se, and that could be used to fall within the scope of the claim. And it would operate, and it would work. Again, you've got to remember, configure to engage are general words to show an interface relationship between the various components. It has to be used consistently each time in the claim, and that's what's done here. What the court did is take a word from the spec, camming. The court, it did this, and I'll send it down. It said configure to engage, I'll define that to be configure to camming engage. There's no defining configure, there's no defining engage. It just added the word, it said grab out of the spec, which was preferred embodiment, and one way to do it, absolutely the way to do it. And I suppose that claim construction didn't necessarily illuminate the configuration. It simply added another functional attribute, leaving undefined what the configuration is. So I'm not sure where that gets us. It still is a limitation that isn't in the claims, and there's only one way you can get there, and that's to go back in the spec and pull it out of the preferred embodiment. And that's what the error is here, because configure to engage has to be interpreted the same for all the different uses to show the interface relationship between the various components. And the camming link is one way to do it. No one disputes that. But it's not the only way, and it's unfair to the claim, to the applicant, to say, oh, well, you're stuck with camming link, because that's your preferred embodiment, you didn't describe any others. But that's the error of the law here. And if you look at what the court did, the court said, well, in our area, meaning could mean mesh and interlock, but I'm not going to apply that, because, for whatever reason. Because when you describe something mesh and interlock, it still doesn't say the way to do it. And that's where the court went wrong. They said, well, the claim didn't say the way to do it. And if you look back, the court said, well, the way to do it in this, the only way they showed to do it, in his view, was camming link. And he stuck that as a camming relationship into the claim. And that's the error. He brought in something that was absolutely the preferred embodiment. There's nothing, nothing in the spec that says camming is important to this invention to make it work. I'm sorry. Go ahead. One last point on this, and that is that the, I mean, certainly Claim 3 talks about the flanges, the arcuate flanges. Yes. So it would be wrong on the doctrine of claim differentiation to attribute or to construe the configure to engage in Claim 1 as being flanges. That's right. But yet the district court's claim construction adding cammingly engage sort of… Brings in flanges. I'm having a hard time understanding what it exactly does. Because it does seem to bring in a camming surface. It certainly brings in a camming functionality. And that's the error. I think you identified the error. That's why configure to engage must be interpreted broadly in all three places it's used to be an interface relationship between the various components. Period. That's it. We don't need to go any further. We don't need to interpret it. I mean, you and me mesh or interlock. It is what it is, and it's understood. You think configure to engage is connected to? Configure to engage means connected to. It could. I mean, there's not a dispute that it's engaged as far as the huge product. I yield to my brother, Judge Bryson. I have a different term that I want to get clear about what you feel is the meaning. The locking cap. Does that have independent definitional significance in the claims? Or is it simply a cap which is described by the language in the rest of the claim? Well, for purposes of infringement, there's no dispute. But I want to answer your question. The answer to your question is it does have a special meaning because the claim, excuse me, the specification itself says in column one it talks about prior and caps, and it says various kinds, but one they don't like or threat. Why? Because it can come loose. Why? Because it can be over-tight and cause a problem. What is it about the term locking cap that excludes a set screw? Let me put it to you that way. Define locking cap for me. This claim, each of these claims except for the flange and slot claims, but a number of them seem to read on their face on set screws. So presumably if they don't read on set screws, and you say they don't, then the only way they don't is for the term locking cap to have some restrictive meaning. Now, what is the restrictive meaning that locking cap has? I'm going to give that to you in a second, but I'll just let you know the judge down below didn't give us a specific term. I understand that. It isn't an issue for infringement. It may be related, but I'm going to give you a meaning now. The meaning is based on the statements in the specification. It would be a threadless fastener used to lock the spinal rod in position. That's what was given up. A threadless fastener is not camming versus everything else in the world, and that's the only proper way to read that pattern, is that what was given up was the threads and the end cap, and that's fine, but that doesn't mean, take the next step, that the only other way you could do it is just camming. That's not right. There are other ways to do it. You could have a coupler. You could have a bayonet connector, which is a common connector. You could have a spring loaded, and that would fall within the scope of the claims and avoid the threading problem. In the prosecution history, I read your characterization of the invention and the locking cap in particular as limited to the subject, I think you said, a novel device for securing the spinal rods for the spine that includes a locking mechanism in the form of a top loaded locking cap that can only be rotated 90 degrees. Do you think that's the correct definitional language to look to for a locking cap? I don't, and I understand that's what it says. That's in the prosecution history, and that's your prosecuting attorney. But you think that's not the definition that you would abide by? Well, it's not the definition I've given thought to, Your Honor. This was presented in the district court, and in your motion, this was in connection with validity. Just to be honest, they were still infringed because that's what theirs does. Theirs goes 90 degrees. So I don't know if what was given up in the meaning of the locking cap would go to that narrow of a scope. That's the issue I have. I tend to agree, and I do believe, the spec and the patent says the locking cap isn't everything out there. We know that, and we believe what they've given up is the threat aspect of it because of the problems associated with the threat. Here's my problem, and it's the same problem that Judge Quist had, I think. If you read this claim, particularly in light of the specification and the references to the threaded caps, it sounds like what you're saying is we're claiming that everything out there except what's in the prior art. I disagree. Well, what is the language in the claim that I look to to find the limitation that excludes set screws? Is it the term locking cap? Locking cap. So I need a definition of locking cap to know what the claim means, but you tell me that the definition that was given in the prosecution history is not the right definition. Well, I'm not sure that's a definition given to locking cap. I don't want to concede that because I don't think I can concede it. I believe for the purposes of infringement and not infringement, locking cap wasn't an issue. It wasn't defined by the district court judge, and it's not before us. The issue is what configured engagement is. Well, as a matter of law, it's before us, I would think. Well, okay. It may not be flushed out completely, I think, is maybe a better way to say it because if it relates to anything, it relates to the issues of validity and validity, and that didn't come up on this appeal. I think that's the way I see it. And what was given out was only the threaded versus non-threaded, nothing beyond that. And I believe the specifications and the claims are consistent with that, and Judge Bryson's concern relates to the meaning of locking cap. Okay. Well, why don't we hear from the other side? We'll give you a minute or two. You've used up your time. Or we have. Mr. Petty. May it please the Court, the limitation at issue here is not configured to engage. Those are words taken out of several different limitations that we find in the representative claim one. Configured to engage by itself has no meaning with reference to this invention. We need to actually do what one ordinary skilled lawyer would do in trying to understand this claim. Start with the claim. We look at claim one. It says the purpose of this device is for securing a spinal rod to a spine, and it gives us three different elements for that. One is the head portion that holds the rod. That's all it does. It's a place for the rod to be retained. It gives us a facet, a well-known structure for holding a pedicle screw system like this to the bone. It could be a hook, a clamp, it could be screws. But not a whole part of this invention, and that literally is what this specification says in Column 8, Lines 60 to 65, with the two-part cap in Column 5, Lines 19 to 25, is the locking cap. Now the locking cap doesn't have a unique definition in this claim. The locking cap is defined as having a first portion configured to engage an interior surface of the head portion. It has a second portion, a recess configured to engage an interior surface of the spinal rod. When we look at these structures, we see for the second part of the construction, there is structure defined for the purpose of that second part, a recess. Something that's easy for one of our ordinary skilled art. There's no doubt they can look at the specification to see what a recess means. The one part, the critical part of this claim, the critical part of this structure, is the first portion configured to engage an interior surface of the head portion. It is that portion, and only that portion, that provides the downward locking clamping force that holds our body in place. If there's no downward clamping force provided by that structure, the first portion in the interior surface of the head portion, this device will work. The rod will be held in place. But is it just a part recognized? Do we know that from the claim? Do we know that the downward force is only provided by the first portion? It is actually in the last part of this Clause B.  It's that when the first portion is rotated, that's when the clamping occurs. It has to be a downward force. That's what one ordinary skilled art would conclude from this language. But wouldn't that be true of a set screw, as in the Schleffer prior art? A set screw does exactly the same thing, doesn't it, if it has two parts, as in Schleffer. Let me say, that's an issue of validity. I don't know that it entirely is. We're trying to figure out. This is a patent which refers to the prior art and says, we're not that. That isn't just for purposes, I hope, just for purposes of saying we're everything else, but rather for giving definitional significance to the scope of the claim. I'm hard-pressed in reading this claim to see what it is that limits this claim to something other than set screws, and if so, how much more limiting it is. And your opposing counsel says, I find the answer to that question in the term locking cap. There's two points on that issue. First, we would not concede that a threaded-type cap would be distinguished by any of this kind of language. That was part of our validity case. We will say that the patent purports to draw a distinction, and the distinction that's drawn by the patent has to do with the flanges in the slots. The flanges in the slots are what the district court referred to in concluding that camming engagement is required. And while we can debate what locking cap is, the fact of the matter is locking cap doesn't have any defined meaning in the art other than something that holds a rod in place. And in fact, it's important to note that when Stryker finds it convenient to try to interpret the claim term in this claim, it's more than happy to go to the specification and say, it's everything but that. But when we try to get back to what does the claim mean, what does it tell the one of ordinary civility art, when we look at a first portion configured to engage the locking, the interior surface of the head portion, we're supposed to ignore the specification. Why doesn't the expression configured to engage throughout just simply mean connected to? Well, if that truly was the meaning, then this claim would be inoperative because a cap that's just connected to the head portion wouldn't hold a rod in place. And the specification is absolutely clear on this. In fact, if you go into the specification and you look at what is the first thing this cap says about the configuration of the first portion and the interior of the head portion, you go in the summary of the invention, column 3, lines 15 through 20, it says that that first portion is configured with arcuate engagement flanges configured for canning engagement. But if it means connected to, the claim further specified, connected to, etc., etc., to secure the position of the head portion relative to the spinal rod, which, as Judge Bryson points out, could be provided by a screw or it could be provided by any number of different configurations. It certainly could be included, well, let me put it this way. If the claims were that broad, it would include a lot of different configurations, including the prior art it's trying to distinguish. That is not really what's before the court. What's really before the court is what is the patent saying is the important structure here. The important structure here is a structure that provides, when you have rotation, you get downward force against the rod. The patent defines that as canning engagement. Every single instance where they talk about the engagement between the calves on the upper part of the calf in the two-piece configuration and the interior of the head, which is the language we're looking at, it's a canning engagement. Either the flanges have canning surfaces or it specifically says you have to align this calf properly to provide that canning engagement. In fact, the one feature that's common to every single embodiment in this patent, the single head, the double head, fixed screws, rotatable screws, is that there's a canning flange engaged with canning slots. Every description of that first portion, every description of the interior of the head requires a canning engagement. You will agree with me that it would be improper to construe configured to engage in claim the locking calf configured to engage in claim one as including the flanges because that would violate the doctrine of claim differentiation in light of claim three. Correct? Yes, Your Honor. So if it would be inappropriate to construe claim one as having flanges and if the canning surface that's disclosed, the only canning surface that's disclosed is on the surface, then how is it proper to attribute a canning function to claim one? Because that is the only kind of engagement. We're looking at what does it mean when we look at this claim and see a first portion configured to engage an interior surface of the head portion. The only kind of engagement that is disclosed is a canning engagement. There are no other possibilities that are disclosed and in point to that point. Well, but Mr. Vogler says that's an embodiment. It's not. This is like the Torrell case. This is like the Paz case. This is like the Curtis Wright case where in each instance, if you take the words out of context and apply a dictionary meaning to it, you can claim the whole world. But when you look at the specification and follow what this course directed in Phillips to arrive at an interpretation that's consistent with the claim language and follows the intent of the invention, you have the correct interpretation. The intent of the invention here was to provide a unique kind of locking cap, a locking cap that had a canning engagement between the cap and the interior of the head. The district court did not err by saying it has to be a particular kind of flange engagement because there's more than one flange engagement here. It could be a flange with hooks on it, for example, to hold the head together. The district court didn't make that error. The district court looked and said, how are we going to look at this and what kind of engagement are they talking about? What kind of engagement is necessary to make this device work for its intended purpose? A canning engagement is the only engagement that's disclosed here. Striker points to beta things, for example. Beta things they say should be disclosed. The problem I have with this is that it seems to me that you're kind of taking validity-type arguments and backing them up into claim construction, which is a problem. In other words, what you're saying is either that there's no written description for these other types of embodiments ranging out as far as set screws or that there's no enablement for those kinds of possible embodiments because they aren't specifically referred to and specifically enabled in the specification. But if the claim language is very broad, doesn't that require us, as a matter of claim construction, simply say the claim is what it is, now let's look at the question of whether it's valid? I think the court addressed this in pillars. The court said that there can be instances where the specification makes it clear. Oh, of course, yeah. And it's exactly like the cases Striker cites. It's appropriate to apply that broad claim construction when the specification says there's more than one way to do this. For example, the fastener aspect should be interpreted broadly. It says there's many ways to do this. But this is very close to the cases like Toro and like the other cases we cite in our brief where the patent points to one aspect of the invention. This is the novel point. And even though those words, when taken out of the context of the specification, could be read broadly, it is wrong to do that. I have one other question, technical matter, with respect to how these claims came to be. Looking at some of the prosecution history, it appears that, at least at some earlier point before this patent issued, the language of the claims was a good deal narrower with respect to the locking cap and referred to camming. And that language appears to have disappeared from the claims that they finally emerged. I mean, an amended claim as of July 27, 2001, referred to a locking cap configured to engage an interior camming surface of the channel through a 90-degree arc to secure the head position. But the language that shows up in the claims before us has no such limiting terms. Would this kind of language be taken out of the patent? And if so, why isn't that an indication of an intent to claim broadly? I don't believe that any of the claims that report the court at this point were claims where camming engagement was taken out. There are dependent claims for several different arguments, but the whole issue of camming engagement was not grounds for allowance of the claims. So I don't believe that that is an issue, in terms of something presented and then taken out, where the patent impact was enforced on that. The other issue that Stryker raises that hasn't been addressed is whether the district court abuses discretion in granting sui spati sum or judgment. And I think that just requires a very brief discussion, because Stryker does concede the Sixth Circuit law applies, and that this is an abusive discretion standard of matter. And under the controlling Sixth Circuit law, century management, for example, the Sixth Circuit has been very clear that when a movement presents a summary judgment motion, and there are no disputes of fact presented in connection with that summary judgment motion, the district court, in deciding this is an issue of law, can't rule for summary judgment in favor of the non-rule. And the district court did not abuse discretion here. There are no issues of fact about how Pioneer's quantum system operates. It uses a very different system for locking the rod in place. Rather than a camming engagement between the tabs for the first portion of Pioneer's cap and the interior of the head, Pioneer has a unique two-piece structure. Mr. Fogler would argue, I think, that there wasn't a genuine issue of material fact with respect to the way he was looking at the claims at the time of his motion, but that in light of the district court's claim construction, that presents a different question of fact, and he hasn't had an opportunity to respond. Well, there's two responses to that. First is the Sixth Circuit squarely addresses that kind of situation because this isn't a situation where the district court came up with a new claim construction. This is a claim construction presented in Pioneer's opposition brief. It was argued that the hearing was presented in two further briefings after the hearing. Not once did Pioneer strike or raise any objection based on claim issues of fact. The second thing is if you actually look at what their arguments are, it's really another claim construction argument. Now they want to argue about what camming is. And even under that definition, there is no dispute of fact because their definition of camming requires two wedged surfaces, a flanged and a wedged slot to create camming. And we look at where those wedges have to be in the claims under that construction. It would be the first portion and the interior of the head portion. And there's notice from you that Pioneer's device does not have wedged-shaped flanges or wedged-shaped slots. The tabs surface is shown in figure H in our plaque. When they're engaged, no pressure is put down on the rod until the cap is rotated and the two parts of Pioneer's cap separate using a unique spring clip. I see my time has elapsed. Can I just ask a very quick, again, a technical question about the operation of the accused device? When the head is rotated in the accused device, the cap is rotated. I guess that's not the same. The cap can be rotated. Can it be rotated far enough that the flanges exit the slots on the other side, or can it only be rotated 90 degrees, roughly? Actually, there's a set degree of rotation that's greater than 90 degrees. I believe it's 110 or 120 degrees. Beyond that, the camming creates forces down on the rod and up on the head that keeps you from turning the head anymore, I think. No, there's no camming involved. Well, the camming of the two pieces that are separating. Let me take the word camming off the table because I understand that's a dispute. But the respective relationships between the upper and the lower segments create an upward force coming up from the rod that, in effect, locks the head in place before the flange gets out of the slot. Do you understand what I'm asking? Yes. I believe there's a stop wall, so you can turn it so far. It's not the upward force against the cap that's creating the stop. So there's an actual stop. It only goes so far. There is not, I take it, an actual stop in the patented device so far as the patent reveals? The patent suggests that the stopping of the cap occurs because of the camming action. You can only cam it so far, and it's not the length of the slot of my primary's testimony. Okay. Thank you. Mr. Wilbury, can you have a couple of minutes? Yeah. Thank you. I appreciate that. You know, like a lot of patent cases, we go a little bit wild on claim construction sometimes. You know, the words are the words. They're pretty straightforward. You don't need to go to define configured-engaged to mean configured-camming-engaged. Well, what does cammingly mean? Where did that get us? Where did it get us in this case? It got us nowhere. And why did it get us nowhere? Because that word was added from the spec, vectored from the spec in preferred embodiment. The claim language, it's more... the invention is broader than what counsel described. It's a cap that has two portions. The top portion we discussed in great detail. This bottom portion, second portion, is the one that secures the rod, not the top portion. And, you know, it's not an issue before us as far as infringement. They do it, and it wasn't interpreted any further than the words are the words. So I tend to also agree with Judge Bryson that, you know, we're getting way ahead of us trying to interpret these claims based on some possibilities of validity or invalidity or whether it's operative or not. That can't go that way. That isn't before us, and we don't have the record hashed out enough to do that. What we have before us are these words. They're common words, easily understood, and that's what we should do. And that's the end of it. And if you understand these words and apply them in their common meaning, there's absolute infringement. Thank you. Agents, you may be dismissed.